Bell, J.
The sole question for determination by this court is whether the Cleveland auditorium and exhibition hall is “public property used exclusively for a public purpose” under the provisions of Section 5709.08, Revised Code.
The record reveals a variety of “uses” of the structure in question by various organizations, groups and individuals. It is used, on a rental or concession basis, for trade shows, conventions, public shows and sports events, religious gatherings, graduations, veterans’ meetings, civil service examinations, luncheons and dinners, dances and concerts and, part of the time, a portion of it as a public parking garage.
The auditorium and exhibition hall is under the constant supervision of city employees, and the rental and rate schedules for use of the premises are determined by the city. Doormen, guards, stagehands, electricians, carpenters, plumbers and laborers employed during any use of the premises are employees of the city. The record clearly shows that the premises are operated at a substantial financial loss so far as the city of Cleveland is concerned.
The appellee states in his brief:
“There is no dispute as to what activities were conducted on the subject preraises. The dispute herein is as to the legal conclusion to be drawn from the 12 or 18 different types of *191 activities conducted on said premises as to whether they constitute an exclusive use of public property for public purposes by the city of Cleveland.”
In determining this question, it is necessary to examine several cases decided by this court and attempt, if possible, to reconcile what may appear to be a contrariety of decisions therein.
One group of cases we may refer to as the “federally owned or leased” cases. In Columbus Metropolitan Housing Authority v. Thatcher, Aud., 140 Ohio St., 38, 42 N. E. (2d), 437, this court held that apartment buildings owned by an instrumentality of the United States, including several retail storerooms leased to the highest bidders for private business purposes, were not exempt as “used exclusively for a public purpose.” That case was approved and followed by this court in Federal Public Housing Authority v. Guckenberger, Aud., 143 Ohio St., 251, 55 N. E. (2d), 265. The Supreme Court of the United States in City of Cleveland v. United States, 323 U. S., 329, 89 L. Ed., 274, 65 S. Ct., 280, reversed the Guckenberger case and held that the property, owned by an instrumentality of the United States, even though not used for a public purpose, was nevertheless exempt from taxation by the state of Ohio as a result of the proper exercise of authority by Congress to so exempt it. Similarly, in Dunn, Aud., v. Board of Tax Appeals, 154 Ohio St., 42, 93 N. E. (2d), 278, federally owned improvements for the manufacture of airplanes located on ground owned by the city of Columbus and leased (by assignment) to the United States were held not taxable in spite of the fact that the lease which was assigned to the United States provided that taxes should be paid on the improvements. In City of Dayton v. Haines, Aud., 156 Ohio St., 366, 102 N. E. (2d), 590, vacant land owned by a city and leased to the federal government for grain storage was held taxable on the ground that the use for a public purpose must be such that it may be considered as use by the one whose ownership renders the property public property. However, that case was specifically overruled in City of Dayton v. Haines, Aud., 169 Ohio St., 191, 158 N. E. (2d), 201, where the court held that real property owned by a city and leased to the United States and used by that lessee exclusively *192 for public purposes was exempt from taxation, pursuant to Section 5709.08, Revised Code.
A second group of cases may be referred to as the “public housing” cases. In Columbus Metropolitan Housing Authority v. Thatcher, Aud., 140 Ohio St., 38, 42 N. E. (2d), 437 (housing constructed by housing authority for low income tenants, the court holding that the constitutional word, “exclusively,” must be read into a statute exempting “public property used for a public purpose”), Dayton Metropolitan Housing Authority v. Evatt, Tax Commr., 143 Ohio St., 10, 53 N. E. (2d), 896, 152 A. L. R., 223 (housing constructed with a 90% loan of federal money, 10% being paid by sale of bonds to the public, for rental without profit), and Youngstown Metropolitan Housing Authority v. Evatt, Tax Commr., 143 Ohio St., 268, 55 N. E. (2d), 122 (housing quarters occupied by renters who could pay rent in such sum as would maintain the property and pay interest and principal on outstanding bonds issued to pay the full cost of construction), this court held that the subject property, although public property, was not used exclusively for public or charitable purposes and so was not exempt from taxation under the predecessor statute to Section 5709.08, Revised Code.
A third group of eases may be referred to as the “used in part” cases. In Pfeiffer et al, Trustees of Akron Public Library, v. Jenkins et al., Board of Tax Appeals, 141 Ohio St., 66, 46 N. E. (2d), 767, it was held that a building purchased for use as a library was not exempt as property used for a public purpose since it was only being so used in part, one floor being occupied by commercial tenants during remodelling. A year later, the court decided City of Toledo v. Jenkins et al., Board of Tax Appeals, 143 Ohio St., 141, 54 N. E. (2d), 656, and, in the first paragraph of the syllabus, cited the Pfeiffer case as standing for the proposition that an application for exemption of property from taxation raises the question only for the year in which the application is filed. The court then went'on to hold that the words, “exclusive use for a public purpose,” do not require that all property that is part of a utility unit be used for public purpose and approved a division of the land between taxable and nontaxable property.
A fourth category of cases is the “public transportation” *193 group. This court originally held in Zangerle, Aud., v. City of Cleveland, 145 Ohio St., 347, 61 N. E. (2d), 720, and City of Shaker Heights v. Zangerle, Aud., 148 Ohio St., 361, 74 N. E. (2d), 318, that municipally owned real and personal property used in carrying on a rapid transit system was not exempt from taxation, the latter case citing the former as authority. However, in City of Cleveland v. Board of Tax Appeals, 167 Ohio St., 263, 147 N. E. (2d), 663, the earlier case was ’overruled, and the court held that real and personal property of a municipally owned transportation system, used solely for the mass transportation of the residents of the muncipality, was “public property used exclusively for any public purpose” within the meaning of Section 5709.08, Revised Code, and Section 2, Article XII of the Constitution.
Another group of cases, for want of a better designation, may be called the “leased premises” group. In Division of Conservation and Natural Resources v. Board of Tax Appeals, 149 Ohio St., 33, 77 N. E. (2d), 242, it was held that real property owned by the state and rented to a private citizen who paid rent by giving the state fish for its streams from a hatchery owned by the tenant was not exempt. Then in the stadium and arena cases, City of Cleveland v. Board of Tax Appeals, 153 Ohio St., 97, 91 N. E. (2d), 480, 16 A. L. R. (2d), 1354, and Board of Park Commissioners v. Board of Tax Appeals, 160 Ohio St., 451, 116 N. E. (2d), 725, the court held that a stadium and a sports arena owned by municipalities and leased to private persons for their use and profit (stadium case) or to a corporation not for profit but which promoted entertainment events for revenue (arena case) were not exempt.
The last group of cases which must be noted is the “off-street parking” group. In City of Columbus v. County of Franklin, 167 Ohio St., 256, 147 N. E. (2d), 625, the court held that real property constructed and owned by a city for off-street parking was not exempt, both because of the provisions of Section 5709.08, Revised Code, and because of the provisions of Section 717.05, Revised Code, that such real estate acquired for off-street parking shall not be tax exempt. And in City of Cleveland v. Carney, Aud., 168 Ohio St., 305, 154 N. E. (2d), 752, primarily on the authority of the Columbus case, the court *194 held that a four-acre tract of land, a portion of the airport owned by the city of Cleveland, leased by it to the Airport Parking Company, a private corporation, to be operated by it for its own profit under a lease whereby the city was to receive a percentage of the gross receipts as rental, was used primarily for off-street parking and, therefore, was not exempt.
Prom all those eases, only a few general rules can be gleaned. Clearly, property which is owned or leased by the federal government and declared by Congress to be tax exempt is exempt, even though it is not used exclusively for public purposes. And municipally owned property, both real and personal, which is used solely for the mass transportation of the residents of the municipality is exempt. On the other hand, housing constructed and owned by others than instrumentalities of the United States is not exempt. And municipally owned facilities for off-street parking or state or municipally owned facilities leased to another for the purpose of conducting a private business (fish hatchery) or sporting or other entertainment events therein are not exempt.
In a class virtually by itself is the Toledo airport case (143 Ohio St., 141) where the court considered the various parcels of land on which were located the various facilities of the airport, hangar by hangar and barn by barn, and held some to be exempt, others not.
The facts of the instant case can not be fitted exactly into the pattern of any of those hereinbefore discussed. Perhaps those cases to which these facts most clearly relate are the Cleveland stadium case (153 Ohio St., 97) and the Troy sports arena case (160 Ohio St., 451). Yet it appears that those cases may be distinguished from the instant one and without resort to the question of profit or lack of profit, although the argument may well be made that, since the receiving of substantial profit from the operation of the stadium was apparently persuasive to the court in denying exemption there, the uncontradicted fact of operation at a loss in the case of the public auditorium should be persuasive in allowing exemption here. But more of a distinction appears in the manner of operation. In each of the stadium and sports arena cases, the property was leased to a single tenant, which tenant was responsible *195 for the operation. The record here indicates that employees of the city of Cleveland actually operate the auditorium and exhibit hall. And the record is equally clear that private organizations come into the auditorium and exhibit hall not as users or operators, as in the cases of the stadium and sports arena, but as concessionaires. The nature of this right is a permit of short duration during which the elements of service necessary to the exercise of the permit are provided directly by the city.
The question then raised and the one which will determine this controversy is whether the exercising of their permit by the concessionaries is the fulfilling of a public purpose so as to make the use of this property, which admittedly is public property, a use “exclusively for a public purpose.”
Undoubtedly, trade shows and conventions, although not open to the public generally, nevertheless provide a benefit to the city as a whole. Hotels, restaurants, department stores, night clubs and other businesses profit directly and others connected therewith as employees profit indirectly from the presence of such events in a city. Were not such affairs of general benefit to a community there would not be the competition which exists among cities in the inducing of organizations to bring their conventions and trade shows to one city or another. Such a benefit is a public benefit because it affects all in the community directly or indirectly. Similarly, shows and musical entertainments, as well as meetings of various groups (whether luncheon or dinner meetings or not), and graduation and religious gatherings, intended to educate or to entertain, make for a more enlightened happier citizenry. That a variety of use is made of the auditorium is indicative of its attraction for all segments of the public, the flower lover as well as the circus fan or the sportsman. Such uses can only make for the common good, for the common prosperity of the community.
Most difficult of resolution is the problem raised by the use of part of the facilities of the auditorium as a parking garage. The record reveals that parking space for approximately 400 cars is used not only in connection with public shows as a convenience to the patrons attending them but is used generally for public parking at times when not being used for exhibit *196 purposes. The testimony shows that “the primary purpose of that area is considered to be exhibit space and not parking area. In the event we get an application for exhibits, the exhibits prevail over parking.”
Either of two avenues may be used as an approach to this question. We might do as was done in City of Cleveland v. Carney, Aud., 168 Ohio St., 305, 154 N. E. (2d), 752, where it was said that the primary purpose was off-street parking and, therefore, the property was not exempt, and say that, since the primary purpose here is not parking but use for exhibit purposes, the property is exempt. Or we might do as was done in the Toledo airport case (143 Ohio St., 141) and attempt to divide up the taxability or nontaxibility by way of some formula depending on percentage of use. Travel by the latter avenue, however, might well lead to some impossible, or at least extremely confusing, situations and prevent anything resembling a sensible workable interpretation and application of the tax exemption statute.
The more sensible approach would seem to be to view the parking use of a part of the auditorium and exhibit hall as only a small incidental part of the overall use, insufficient to destroy the tax-exempt character of a facility which in the main is used exclusively for a public purpose.
Reaching the conclusion that the public auditorium and exhibit hall in Cleveland is used exclusively for public purposes and therefore exempt under Section 5709.08, Revised Code, is in keeping with a public policy that has been expressed several times by this court, as, for example, by Judge Hart in Dayton Metropolitan Housing Authority v. Evatt, supra (143 Ohio St., 10):
“The philospphy or reason for the tax exemption of public property, as described in the statute, is that inasmuch as it is purchased and maintained by public revenues derived from taxation, its taxation would not inure to any public advantage. In such case, the tax debtor is also the tax creditor. The exemption of such property from taxation avoids the burden of the collection of tax revenues from and their disbursement to the same public entity of tax revenues arising from and devoted to the same property.”
*197 The decision of the Board of Tax Appeals is unreasonable and unlawful and is, therefore, reversed.

Decision reversed.

JJ., Weygandt, C. J., Zimmerman, Taet, Matthias and O’Neill, concur.
Herbert, J., not participating.